

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MICHAEL O'CALLAGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 7318 |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Joseph Michael O'Callaghan ("O'Callaghan") has filed this quiet title action against the

United States of America (alternatively, the "government"); Department of Revenue of the State

of Illinois; the Estate of Alex V. Wasleff, Jr. (the "Estate"); Albany Bank and Trust Co., N.A.;

Chrysler First Business Credit Corporation; Security Pacific National Bank; Chicago Title Land

Trust Company; Alex Wasleff Services Corporation; Elm Limited, LLC; and "unknown owners"

(collectively, "Defendants"). Presently before the Court is the government's converted motion

for partial summary judgment. (R. 68, Gov't Mem. at 13; R. 69, Gov't N.D. Ill. L.R. 56.1

Statement.) Additionally, O'Callaghan has presented two motions to strike. (R. 73, Pl.'s Mot. to

Strike; R. 82, Pl.'s Mot. to Strike.) For the reasons stated below, the government's motion is

granted. O'Callaghan's motions are denied.

### RELEVANT FACTS[1]

I.      Underlying transactions

---

[1] The parties in this case have not presented a summary judgment record with their
respective submissions. Instead, in their Local Rule 56.1 statements, they have referred to
exhibits and documents filed with prior motions and submissions. (See, e.g., R. 69, Gov't N.D.
Ill. L.R. 56.1 Statement.) The Court will therefore look to these materials to provide context and
to determine whether partial summary judgment is proper.

This quiet title action involves a parcel of property located at 6110 N. Mozart in Chicago (the "Mozart Property"). (R. 69, Gov't N.D. Ill. L.R. 56.1 Statement ¶ 1.) To present a full picture of what has transpired in this case, the Court must begin its account of the facts with events that took place back in the 1960's.

On June 3, 1968, land trust number 26679 (the "trust") was formed.[2] (R. 19, Am. Compl., Ex. 2.) American National Bank and Trust Company of Chicago was declared the trustee, and Alex V. Wasleff Jr. ("Wasleff") was named the trust beneficiary. (Id.) That same day, the trustee acquired an ownership interest in the Mozart Property. (Id., Ex. 1.)

On June 20, 1977, Wasleff entered into a loan agreement with Albany Bank and Trust Co. and, as security for this loan, assigned one-hundred percent of his beneficial interest in the trust to Albany Bank. (Id., Ex. 5.) In August 1978, the trust received title to the Mozart Property. (Id., Ex. 4.)

In July 1981, Wasleff assigned a one-hundred percent beneficial interest in the trust to O'Callaghan to secure the payment of $75,000 worth of expected attorney's fees that O'Callaghan was to perform. (See id., Ex. 6; R. 21, Estate's Mot. to Dismiss, Ex. E at 22, 30-31.) This assignment was subordinate to the prior collateral assignment to Albany Bank, which was released on May 26, 1982. (R. 19, Am. Compl., Exs. 6-7.)

In November 1982, Wasleff obtained a $50,000 loan from BA Business Credit

---

[2] Under Illinois law, a land trust is defined as "any arrangement under which the title, both legal and equitable, to real property, is held by a trustee and the interest of the beneficiary is personal property and under which the beneficiary or any person designated in writing by the beneficiary, has the exclusive power to direct or control the trustee in dealing with the title and the exclusive control of the management, operation, renting and selling of the trust property together with the exclusive right to the earnings, avails and proceeds of said property is in the beneficiary of the trust." 765 Ill. Comp. Stat. 430/1 (2010).

Corporation ("BA Business") for his business, Alex Wasleff Services Corporation. (*Id.*, Ex. 10.) To obtain this loan, Wasleff provide various forms of security. In addition to a guaranty, Wasleff executed a mortgage of the Mozart Property. (*Id.*, Ex. 10, 12-13.) Wasleff also assigned his beneficial interest in the trust to BA Business. (*Id.*, Ex. 11.) To presumably facilitate the loan, O'Callaghan subordinated his beneficial interest in the trust to BA Business's beneficial interest on November 8, 1982. (*Id.*, Ex. 8.) That same day, however, Wasleff executed a irrevocable direction to the trustee to "reassign the beneficial interest in [the trust] to [O'Callaghan] upon release of said beneficial interest by BA Business Credit Corporation." (*Id.*, Ex. 9.)

On August 8, 1983, the government issued Wasleff a notice of a federal tax lien. (*Id.*, Ex. 13a.) In November of that same year, the government issued a notice of levy to the trustee. (*Id.*, Ex. 14.) Five years later, the government issued another notice of levy to the trustee. (*Id.*, Ex. 16.)

On January 27, 1989, Wasleff and BA Business, which at this point was known as Chrysler First Business Credit Corporation ("Chrysler") entered into a loan modification agreement. (*Id.*, Ex. 17.) As part of this agreement, Wasleff and Chrysler agreed to, among other things, move the final payment date for the loan to January 27, 1994. (*Id.*) Later that year, on April 6, 1989, the government subordinated its tax lien to the modified loan. (*Id.*, Ex. 18.)

The Chrysler loan was not paid by January 27, 1994. (*See id.*, Ex. 24.) According to O'Callaghan, after a six-month extension was granted, he paid the Chrysler loan off in September 1994. (*Id.* ¶ 35; R. 21, Estate's Mot. to Dismiss, Ex. E at 37-38.) Indeed, the record suggests that Chrysler assigned its mortgage on the Mozart Property to O'Callaghan on September 30, 1994. (R. 19, Am. Compl., Ex. 25.)

3

Approximately ten years later, in August 2004, the government issued a certificate of release of federal tax lien. (*Id.*, Ex. 27.)

## II. State court proceedings

Wasleff died on January 16, 2007. (R. 21, Estate's Mot. to Dismiss, Ex. E at 76.) Wasleff's sister, Astairre Dever ("Dever"), was appointed independent administrator of the Estate on March 19, 2007. On October 8, 2008, the Estate filed a "petition to declare [Wasleff's] debt paid in full or compel release of security interest in land trust" in the Circuit Court of Cook County's probate division ("probate court"). (*Id.*, Ex. A.) In this petition, the Estate asked the court to, *inter alia*, (1) "declare that any indebtedness owed by [Wasleff] to O'Callaghan has been paid-in-full or is not longer an enforceable obligation"; and (2) issue an order requiring O'Callaghan to release his assignment in the beneficial interest in trust. (*See id.*, Ex. A at 3.)

On October 26, 2009, O'Callaghan filed a "verified counter-complaint to enforce mortgage and to pay indebtedness." (*Id.*, Ex. C.) In this counter-complaint, O'Callaghan alleged that he is the owner of the Mozart Property by virtue of: (1) the beneficial interest in the trust he received July 1981; and (2) Wasleff's alleged default of the mortgage Chrysler assigned to him in 1994. (*See id.* ¶ 38.)

In November 2009, the probate court conducted a trial on the issues raised by the parties in their respective submissions. (*Id.*, Ex. E.) After hearing testimony from O'Callaghan, Dever, and Douglas Davidson (an attorney who had represented Wasleff in his dealings with O'Callaghan), the court ruled that all of O'Callaghan's claims were time-barred. (*Id.* at 121-22.) O'Callaghan subsequently appealed this ruling, along with others made by the probate court.

On October 28, 2010, the Appellate Court of Illinois, First Judicial District ("appellate

court"), reversed and remanded the case. (R. 42, Pl.'s Resp., Ex. 1 at 19-20.) While affirming the majority of the probate court's rulings, the appellate court found that the probate court erred in finding that O'Callaghan's claims were time-barred. (*Id.* at 7-8.)

## PROCEDURAL HISTORY

While the probate proceedings were still pending, O'Callaghan, on July 21, 2009, filed a quiet title action in the Circuit Court of Cook County's chancery division ("chancery court"). On November 20, 2009, the government removed the case to federal court pursuant to 28 U.S.C. § 1442. (R. 1, Not. of Removal.) In May 2010, O'Callaghan filed an five-count amended complaint in which he asks the Court to: (1) declare that the government has no interest in the Mozart Property; (2) find that the government's interest, if any, in the Mozart Property is "subordinate to and extinguished by" his allegedly superior interest; (3) demand that the government prove that its levy is valid and enforceable; (4) quiet title by issuing an order declaring that he is the fee simple owner of the Mozart Property; and (5) appoint a receiver for the Mozart Property. (R. 19, Am. Compl. at 29-32.)

In July 2010, the government filed a counterclaim against O'Callaghan and a cross-claim against various other parties who were linked to the transactions involving the Mozart Property. (R. 29, Gov't Claims at 35-39.) As relief, the government asks the Court to, *inter alia*, determine the relative priorities of the interests in the trust, and, potentially, give it the right to enforce its levy by seizing and selling the Mozart Property. (*Id.* at 39.)

On December 1, 2010, O'Callaghan filed a motion for summary judgment. (R. 44, Pl's Mot.) Later that month, the government filed a response to O'Callaghan's motion in which it argued that the Court should enter summary judgment against O'Callaghan on his quiet title

claim, which is Count IV of his complaint. (R. 68, Gov't Mem. at 13.) On January 5, 2011, the

Court denied O'Callaghan's motion for summary judgment, and converted the government's

response into a partial motion for summary judgment on O'Callaghan's ownership claim. (R. 70,

Min. Entry.) Since then, O'Callaghan has filed two motions to strike various portions of the

government's briefing on their partial motion for summary judgment. (*See* R. 73, Pl.'s Mot. to

Strike; R. 82, Pl.'s Mot. to Strike.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(f), a district court, after giving notice and a

reasonable time to respond, may: (1) grant summary judgment for a nonmovant; (2) grant the

motion on grounds not raised by a party; or (3) consider summary judgment on its own after

identifying for the parties material facts that may not be genuinely in dispute. Fed. R. Civ. P.

56(f). Indeed, the Seventh Circuit has recognized that a district court can enter summary

judgment on its own motion so long as notice and a reasonable time to respond is given. *Golden*

*Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 461-62 (7th Cir. 2009) (noting that a "district

court can enter summary judgment *sua sponte*, or on its own motion, under certain limited

circumstances") (citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)

(observing that "district courts are widely acknowledged to possess the power to enter summary

judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with

all of her evidence") (citations omitted). Relatedly, when a motion for summary judgment is

filed by one of the parties, a court may grant summary judgment for the nonmoving party in the

absence of a formal cross-motion. 10 A C. Wright, A. Miller & M. Kane, Federal Practice and

Procedure § 2720 at 345-52 (3d ed. 1998).

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006) (quoting *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994)). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The moving party may discharge its initial responsibility by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the nonmoving party has the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323.

Once a properly supported motion for summary judgment is made, the nonmoving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *Keri*, 458 F.3d at 628. Instead, it must come forward with specific facts showing that there is a genuine issue for trial–raising some metaphysical doubt as to the material facts is not enough. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Conclusory allegations, if not supported by the record, will not preclude summary judgment.

7

*Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)). In evaluating this converted motion for summary judgment, the Court will consider O'Callaghan as the nonmoving party, and will apply these standards accordingly.

## ANALYSIS

### I.     Converted motion for summary judgment

The government argues that "O'Callaghan's ownership claim is so clearly refuted by his own undisputed documentary evidence that the Court should enter summary judgment against him on the ownership claim." (R. 68, Gov't Mem. at 13.) According to the government, O'Callaghan has failed to provide evidence establishing that the beneficial interest he obtained in 1981 or the assignment of mortgage from Chrysler in 1994 create a fee simple interest in the Mozart Property. To evaluate this contention, the Court must first take a brief look at state property law, and specifically, quiet title actions.

"An action to quiet title in property is an equitable proceeding in which a party seeks to remove a cloud on his title to the property." *Gambino v. Boulevard Mortg. Corp.*, 922 N.E.2d 380, 410 (Ill. App. Ct. 2009) (citing *Stahelin v. Forest Pres. Dist. of DuPage Cnty.*, 877 N.E.2d 1121 (Ill. App. Ct. 2007)). "A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which, in fact, is unfounded or which it would be inequitable to enforce." *Id.* (citation omitted). "'It is a fundamental requirement in an action to quiet title or in an action to remove a cloud from a title that the plaintiff must recover on the strength of his own title, although it is not required that perfect title be established.'" *Id.* (quoting *Lakeview Trust & Sav. Bank v. Estrada*, 480 N.E.2d 1312, 1327 (Ill. App. Ct. 1985)). A plaintiff therefore cannot claim that there is a cloud on his title, unless he actually has title. *Id.* (citation omitted); *see* 31

Illinois Law and Practice § 5 at 9 (1996) ("An action to quiet or to remove a cloud from title to real property can be maintained only by one who holds a title to the property"). In addition to having title, a plaintiff who brings a claim to quiet title must also have possession of the property at the time the suit is filed. *See Bennett v. Chi. Title & Trust Co.*, 936 N.E.2d 1068, 1078-79 (Ill. App. Ct. 2010) (finding that plaintiff needed more than possession of the property in question to have "standing" to bring a quiet title action); *Dodge v. Nieman*, 502 N.E.2d 393, 395 (Ill. App. Ct. 1986) ("It has been uniformly held that the plaintiff bringing suit in equity to quiet title to real estate must plead and prove that it was in actual possession of the real estate at the time the suit was filed."); *see also* Illinois Law and Practice § 6 at 9 ("Generally, an action to quiet or remove a cloud from the title to real property can be maintained in Illinois only where the plaintiff is in possession or where the premises are unimproved or unoccupied.").

Here, O'Callaghan has failed to point to any portion of the record which indicates that he actually has title to the Mozart Property.[3] (*See* R. 74, Pl.'s Mem.; R. 72, Pl.'s N.D. Ill. L.R. 56.1 Statement.) While the record does indicate that O'Callaghan obtained a beneficial interest in the land trust in 1981 and an assignment of mortgage from Chrysler in 1994, it does not contain evidence establishing that he presently has title to the Mozart Property. As such, a quiet title claim is not the proper method of enforcing his alleged interests. *See, e.g., Gambino*, 922 N.E.2d at 410. Additionally, the record does not indicate that O'Callaghan has possession of the Mozart Property. In fact, it contains affirmative evidence to the contrary. (*See* R. 21, Estate's Mot. to Dismiss, Ex. E at 18.) This deficiency also dooms his quiet title claim. *See, e.g., Dodge*, 502

---

[3] The Court notes that in his memorandum opposing the government's converted motion, O'Callaghan suggests that he does not actually have title to the Mozart Property. (*See* R. 74, Pl.'s Mem. at 5 (noting that if he is appointed successor trustee to the land trust, he would have "the right to convey title of the property to himself").)

N.E.2d at 395.

The status of the alleged interests held by the Estate, O'Callaghan, and the government is presently unclear. What is clear, however, is that given the lack of evidence on the issue of title and possession, no reasonable jury could find for O'Callaghan on his quiet title claim. Accordingly, the Court grants the government's converted motion for summary judgment on O'Callaghan's quiet title claim.

## II.     Motions to strike

Given the Court's ruling on the converted motion for summary judgment, O'Callaghan's motions to strike are denied as moot. In the future, the Court orders both parties to adhere to Local Rule 56.1 in both presenting and opposing motions for summary judgment. Three points warrant emphasis. First, along with a supporting memorandum, each party should file the supporting materials it relies upon. *See* N.D. Ill. L.R. 56.1(a)(1). The Court should not have to refer to attachments to previously filed documents to determine whether factual assertions are indeed supported by evidentiary material. Second, references to the record should use proper Bluebook citations to exact pieces of the record. *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). While Bluebook perfection is not required, parties should strive to adhere to citation norms. Third, a response to the movant's Local Rule 56.1 statement is not the place for purely argumentative denials. *See id.* at 584. Arguments are best made in briefs, not in Local Rule 56.1 statements.

## CONCLUSION

For the reasons stated above, the government's converted partial motion for summary judgment (R. 68, 69) on Count IV is GRANTED. O'Callaghan's motions to strike (R. 73, 82) are

DENIED. Discovery in this delayed case will end on August 30, 2011. A final and firm litigation schedule for this lawsuit will be set at a status hearing in open court on April 5, 2011 at 9:45 a.m. The parties are requested to exhaust all remaining settlement possibilities for this dispute.

Entered:

Judge Ruben Castillo
United States District Court

**Dated:** March 22, 2011

11